UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
ACUITY,                                                         :
:          CASE NO. 16-CV-55
             Plaintiff,                                         :
:
         vs.                                                    :          OPINION & ORDER
:          [Resolving Docs. 9, 12]
MIDWEST CURTAINWALLS, INC.,           :
:
             Defendant.                                         :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Acuity brings an insurance coverage declaratory judgment action against Midwest Curtainwalls, Inc. ("Midwest"). Midwest moves to dismiss or stay the declaratory judgment action pending the outcome of the underlying California litigation.[1] For the following reasons, this Court **DENIES** Defendant Midwest's motion.

## I. Background

Plaintiff Acuity is a Wisconsin insurance company. Defendant Midwest is an Ohio contracting company. From June 30, 2007, to June 30, 2014, Midwest received general liability and commercial excess liability coverage with Acuity.[2] The policies cover certain types of "property damage" caused by an "occurrence."[3] The policies have several exceptions to coverage.[4]

While under the Acuity policies, Midwest started work on a job for the San Francisco InterContinental hotel. Midwest was one of several companies working on the hotel's

---

[1] *CDC San Francisco LLC v. Webcor Builder, Inc.*, Case No. CGC 15-546222 (Cal. Sup. Ct., San Francisco Cty.).
[2] Doc. 1 at 2; Doc. 1-1.
[3] Doc. 1 at 6. The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*
[4] *Id.* at 8–10; Doc. 1-3 at 4–5.

Case No. 16-cv-55
Gwin, J.

curtainwall glazing system that includes insulated glass windowpanes. Midwest was responsible for making some of the curtainwall glazing system components.[5]

On March 1, 2013, the hotel noticed a grey film forming between the insulated glass windowpanes.[6] On June 9, 2015, hotel owner CDC San Francisco, LLC ("CDC") brought tort and breach of contract claims against Midwest and the other contractors in California Superior Court.[7] CDC claimed that the grey film formed due to "performance malfunction."[8] The California litigation is ongoing.

On July 16, 2015, Acuity retained counsel to defend Midwest in the California lawsuit under the parties' insurance policies.[9] On July 16, 2015, Acuity also issued a rights reservation letter.[10]

With its letter, Acuity said that it might seek a declaratory judgment as to whether Acuity owed Midwest coverage or defense in the California lawsuit.[11] Acuity also said that it believed that it did not owe coverage or defense because the California claims did not fall under the policies. Acuity said the California claims were not for property damage caused by an "occurrence" and that several policy exclusions applied to the claims.[12]

On January 11, 2016, Plaintiff Acuity filed its declaratory judgment complaint.[13] On April 25, 2016, Defendant Midwest moved to dismiss or stay the action pending the outcome of the underlying California litigation.[14]

---

[5] Doc. 1 at 3.
[6] *Id.*
[7] *Id.* at 2.
[8] *Id.* at 3.
[9] Doc. 1-3 at 1.
[10] *Id.*
[11] *Id.* at 9.
[12] *Id.* at 8–9.
[13] Doc. 1.
[14] Doc. 9. Plaintiff opposes. Doc. 10. Defendant replies. Doc. 11. This Court denies Plaintiff's motion for leave to file a sur-reply as moot. Doc. 12.

Case No. 16-cv-55
Gwin, J.

## II. Legal Standard

A district court may exercise its discretion to stay or dismiss an action for a declaratory judgment during the pendency of a parallel state court proceeding.[15]

Generally, in deciding whether to exercise jurisdiction over a request for declaratory judgment, courts consider: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the relevant legal relationships; (3) whether the declaratory remedy is being used as mere "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether the declaratory action would increase friction between the state and federal courts; and (5) whether a better or more effective alternative remedy exists.[16]

## III. Discussion

### A. Settling the Controversy

Declaratory judgment in this case will settle the coverage and defense controversy between Acuity and Midwest. Declaratory judgment will not settle the underlying California litigation. As explained below, settling just the controversy between Acuity and Midwest is enough to satisfy this factor.

In *Scottsdale Ins. Co. v. Flowers*, the Sixth Circuit noted two competing lines of insurance coverage declaratory judgment cases.[17] The first required the declaratory judgment to settle the underlying controversy.[18] The second only required the declaratory judgment to settle the discrete controversy before the court.[19] The difference between the two lines of cases turned

---

[15] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).
[16] *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813 (6th Cir. 2004).
[17] *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008).
[18] *Id.*
[19] *Id.*

-3-

Case No. 16-cv-55
Gwin, J.

on competing policy considerations and whether the discrete controversy involved more legal or factual issues.[20]

Acuity's coverage dispute involves legal issues that are distinct from the underlying California tort litigation. As in *Scottsdale*, Acuity was not a party to the underlying California action. Unlike in *Bituminous*—where dispositive state law employment issues were pending in two parallel state court proceedings[21]—this Court does not need to "inquire into matters being developed through state court discovery"[22] to resolve the coverage dispute. This factor favors granting jurisdiction.

**B. Serving a Useful Purpose**

This second factor is closely related to the first factor.[23] "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue."[24]

The *Scottsdale* court recognized a precedent split similar to the first factor split.[25] However, for the second factor, the *Scottsdale* court explicitly held that it was more persuaded by the line of cases holding that a "district court's decision must only clarify the legal relations presented in the declaratory judgment action" without needing to resolve the underlying dispute.[26]

---

[20] *Id.*
[21] *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813 (6th Cir. 2004).
[22] *Scottsdale*, 513 F.3d at 556.
[23] *Id.* at 557 (citations omitted).
[24] *Id.* (citations omitted).
[25] *Id.* (comparing *W. Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 397 (6th Cir. 2006) (declaratory relief proper where action only involved insurer and insured), *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003), *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987), and *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986), with *Travelers Indem. Co. v. Bowling Green Prof'l Associates, PLC*, 495 F.3d 266, 272 (6th Cir. 2007), *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 565 (6th Cir. 2006), and *Bituminous*, 373 F.3d at 814 (declaratory relief improper in part because the action would not clarify all of the underlying legal relationships)).
[26] *Id.*

Case No. 16-cv-55
Gwin, J.

In this case, Plaintiff asks this Court to clarify the legal relationship between Acuity and Midwest. This Court does not need to clarify any other relationships in order to resolve the dispute between Acuity and Midwest. As in *Scottsdale*, resolving the insurance coverage and defense issues "will not confuse the state court's analysis" of whether Midwest is liable to CDC in the underlying California litigation. This factor favors granting jurisdiction.

**C. Being "Procedural Fencing" or "An Arena for a Race to Res Judicata"**

The *Scottsdale* court explained the first factor, saying:

> The third factor is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum. The question is . . . whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first. [Courts] are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record. Indeed, when the plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff the benefit of the doubt that no improper motive fueled the filing of the action.[27]

In this case, Plaintiff filed this declaratory judgment action seven months after CDC filed the complaint in the underlying California litigation. Acuity is not a party to the California lawsuit, and it does not appear that Acuity's coverage dispute will be addressed in that case.[28]

Defendant Midwest says that Acuity filed for declaratory judgment because "Acuity wants to deny Midwest its right to a defense before the California Action is resolved."[29] This argument loses. The point of a coverage and defense declaratory judgment is to see whether the insurance company has a duty to indemnify or defend the insured for a particular dispute.

Defendant also says that "there could be an issue as to which state law, Ohio or California, should apply to the potential coverage dispute depending on which choice of law

---

[27] *Id.* at 558 (internal citations, quotations, and brackets omitted).
[28] *See* Docket, *CDC San Francisco LLC v. Webcor Builder, Inc.*, Case No. CGC 15-546222.
[29] Doc. 9 at 23.

-5-

Case No. 16-cv-55
Gwin, J.

analysis, Ohio or California, governs."[30] However, Defendant does not explain how applying Ohio choice of law would result in a different or more favorable application of law for Plaintiff.[31]

Defendant does not show that Plaintiff filed this action for declaratory judgment for improper reasons. Rather, it seems that Plaintiff wants to know whether it needs to continue to pay for Midwest's defense in the California litigation. This is a proper use of a declaratory judgment action. This factor does not weigh in favor of declining jurisdiction.

**D. Increasing Friction Between the State and Federal Courts**

The fourth factor, whether accepting jurisdiction would increase friction between federal and state courts, favors denying the motion to stay. In considering this factor, three sub-factors are relevant:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.[32]

The first sub-factor does not favor declining jurisdiction. In order to resolve the coverage and defense dispute, this Court needs to interpret the parties' insurance policies as it applies to Midwest's curtainwall components. The underlying facts about what the policies say and what work Midwest did are unlikely to be in dispute. This contractual analysis is unlikely to invoke unsettled areas of state law.

---

[30] Doc. 9 at 21.
[31] It seems likely that under either Ohio or California choice of law analysis, Ohio law would apply to the parties' insurance policies. *See Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir. 2012) (interpreting California choice of law framework); *Ohayon v. Safeco Ins. Co. of Illinois*, 747 N.E.2d 206, 209 (Ohio 2001) (applying Ohio choice of law framework). The polices seem to have been executed in Ohio and cover an Ohio insured. Under either framework, Ohio would seem to have the most significant relationship to the insurance policies.
[32] *Bituminous*, 373 F.3d at 814–15.

Case No. 16-cv-55
Gwin, J.

Defendant Midwest says "[t]he work and products of [California litigation co-defendants] Webcor, AGA, Viracon, Quanex, and Midwest are potentially at issue, depending on the facts, expert testimony, and how the terms 'work' and 'product' in the context of this Project and under California law are defined." This argument loses. The insurance coverage dispute is essentially a contract dispute, with terms like "work" and "product" defined within the policy.

Deciding whether the harms CDC claims in the California litigation come from "property damage" caused by an "occurrence" or whether the harms fall under one of the policy exclusions carries little risk of inconsistent state law rulings, especially when that issue is not before the California Court.[33]

The second sub-factor also does not favor declining jurisdiction. The California state courts are not in any better position to analyze an insurance policy than an Ohio federal district court. This Court will assess the language of the contract and its application to Midwest's work in the same way any other court would.

The third sub-factor also does not favor declining jurisdiction. As explained above, it is likely that Ohio law will apply in interpreting the parties' insurance policies and would therefore not create friction with the underlying litigation's California court. Even if California law were to apply to this case, interpreting the parties' insurance policies would not "implicate such fundamental state policies that federal courts are unfit to consider them."[34]

The fourth factor favors granting jurisdiction.

---

[33] *Scottsdale*, 513 F.3d at 560 (quoting *Northland*, 327 F.3d at 454) ("In particular, when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'").
[34] *Id.* at 561 (citing *Northland*, 327 F.3d at 454 (finding that, although the resolution of the declaratory judgment action seeking a determination of the scope of an insurance policy was governed by state contract law, "no state law or policy would be frustrated by the district court's exercise of jurisdiction, which would require the application of [state] law")).

-7-

Case No. 16-cv-55
Gwin, J.

**E. Existence of Alternative Remedies**

Plaintiff Acuity had alternate remedies. Plaintiff could have sought a declaratory judgment in California Superior Court or waited until the conclusion of the underlying California litigation. However, it is not clear that Plaintiff could get a faster determination of its rights under the policies or that some other forum could more effectively decide the declaratory judgment dispute. This factor does not strongly favor declining jurisdiction.

Factors one, two, and four favor granting jurisdiction. Factors three and five do not strongly favor declining jurisdiction. Therefore, this Court finds that the balance of the factors favors granting jurisdiction in this case.

## IV. Conclusion

For the reasons above, this Court **DENIES** Defendant Midwest's motion to dismiss or stay. This Court **DENIES** Plaintiff's motion for leave to file a sur-reply as moot.

IT IS SO ORDERED.

Dated:  June 22, 2016                                  *s/         James S. Gwin*
                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE

-8-